We are going to hear, the case of course will be taken under advisement, we're going to hear the last case of the day, which is appeal number 21-31-18, and it's Blake Stewardson v. Cameron Biggs. And, Schneeman, are you there? Yes, good morning, Your Honor. Oh, there you are. Hi. Thank you.  I want to start by addressing the court's appellate jurisdiction. Stewardson argues that the court lacks jurisdiction to entertain this appeal, because the issue of whether Jail Officer Cameron Biggs had a realistic opportunity to intervene to prevent his co-worker, Christopher Titus, from employing the leg sweep that caused Stewardson to go to the ground in the padded cell. Ms. Schneeman, I think I might be able to cut this short from my view at any rate about, you know, the scope of our appeal. So if we treat Deputy Biggs' motion to reconsider as a Rule 60B motion, given that it was filed more than 28 days after the district court's summary judgment decision, then we have jurisdiction to review the court's ruling on the court's reconsideration decision, but not a summary judgment decision. If the qualified immunity was raised and addressed in the reconsideration decision, and that's the only issue that I understand you are raising on appeal, I think our jurisdiction is secure now. Is that how you see things? I do see things that way. I think your jurisdiction is secure because qualified immunity can be raised at any point in a suit, and because the district court did not consider it earlier, and we timely appealed from the ruling that the district court made. The plaintiff, however, Mr. Stewardson, has challenged this court's jurisdiction for a second reason, and I want to address that. Basically, he's saying that the issue, which we consider a legal issue, the issue of whether Biggs had a realistic opportunity to intervene to prevent that leg sweep, is not just an issue, but is itself a material fact that has to be decided by the jury. And we disagree with that characterization. We don't think that the issue is a question of fact, and there's a couple reasons why. The jail surveillance video shows that just a split second after Biggs entered that padded cell, Titus employed the leg sweep, and Stewardson fell to the ground immediately. The notion that Biggs realistically could have done something to change the course of events once Titus began to swing his leg and Stewardson fell on the ground is utterly discredited by the video. Moreover, there is no evidence in the record that Biggs knew in advance that Titus was going to employ that leg sweep before he actually did so. But the district court's point, as I understand it, is that once Deputy Biggs saw the first incident involving the head slamming, he could have immediately replaced Titus and prevented any second incident from taking place by denying Titus any further access to Mr. Stewardson. I mean, isn't that the key point, that there was, in fact, an opportunity for Deputy Biggs to intervene before they ever got to that padded cell? Well, that's what plaintiff argued, and the district court didn't really say it, but the district court's reasoning is so thin on analysis that I think that's the conclusion that we have to make, that that's what the district court decided. But I don't think that that's the law. The law is that an officer, a law enforcement officer, has a duty to intervene if he or she has reason to know that excessive force is being used, and then has a realistic opportunity to intervene to stop it. What Stewardson has argued, and what apparently the district court agreed with, is that the wall slamming incident put Cam Biggs on some kind of notice that Titus would use additional force at some other point in the future in a different time in a different location in the jail. And we submit that the law is not clearly established, that law enforcement officers have a duty to predict the future. The test that this court has always employed is, if the officer had reason to know, when Biggs witnessed the alleged wall slamming incident in the jail's entryway, he did not have reason to know that there was going to be any additional force used by Titus, much less whether that force was going to be unlawful. So are you saying that for purposes of Biggs's duty to interfere, there is some material difference between one ongoing use of force and two separate uses of force separated by a few minutes or the place? Is that what you're saying? Well, yes, Your Honor, because failure to intervene claims are derivative of excessive force claims. And this court and the district court will evaluate Titus's alleged use of forces as separate and discrete uses of force. Now, granted, this is all part of the process of Stewardson's coming into the jail after he had been arrested, but what the district court is going to do, and what this court has ordered district courts to do, is when there are separate uses of force, courts are to look at the facts and circumstances that were going on at the time, and each separate use of force has to be independently justified. And for the district court to have somehow found, and again, the district court's ruling is very thin on analysis, essentially the district court isn't looking at the two uses of force as separate, independent, discrete uses of force. If, for instance, when Stewardson went to the ground in the jail's entryway, and then someone were to have kicked him, or to have employed a knee strike, or a pressure point, that would have all been in the jail's entryway. That would have all happened in rapid succession, but the court would have looked at each one of those separate instances of force separately, and determined what was going on at the time, and decided whether the use of force was appropriate and justified. And I also want to make the point that the law doesn't presume that law enforcement officers, jail officers, are going to violate the law. Just because an officer might see some type of use of force, and I know wall slamming is alleged for purposes of this appeal to have been unlawful, but merely because a law enforcement officer sees a very quick and sudden use of force, doesn't mean that the officer should anticipate or expect that his co-worker, his fellow law enforcement officers, are going to use excessive force in the future. Again, the law doesn't presume that law enforcement officers are going to violate the law. The only way that you can say that Biggs had a duty to intervene is to say that once he saw one instance of excessive force, he had a constitutional duty to anticipate and expect and presume that his co-worker would not follow the law. Can I give you two different scenarios? In the first, you've got a deputy who starts punching an inmate repeatedly. And in the second, the deputy punches an inmate once, in one area of the jail, two minutes later, in a different area of the jail, punches him again. Assume that the punching is not justified and it is excessive. Is the duty of the supervising deputy to intervene and stop the use of excessive force different as between those two scenarios? Why, if you think it is? Well, I'm processing your question and I apologize if I don't understand it correctly. But I think the scenario that you've put to me is similar to the scenario that we have in our case. In your scenario, you're saying that because an officer witnessed something, he has or she has a constitutional duty to expect that their co-worker will continue to use additional excessive force. And in our wall-slamming incident, if that is what it is, the incident was over and completed. It wasn't an ongoing thing. And I think we get on a very slippery slope to say that law enforcement officers, if they see something that someone might interpret as excessive force, now have a constitutional duty to remove their co-worker from the situation. It puts law enforcement officers in a difficult situation. The whole point of qualified immunity, and that's what we're here to discuss today, is that officers who are doing their best under the circumstances, under rapidly evolving situations, are protected from liability for things that aren't clearly established in the law. And I submit that the law was not clearly established on January 1 of 2018 on a case with reasonably analogous facts to the one that we have here, that when a jail officer sees someone arguably using unlawful force, that all of a sudden they have to drop everything, take a timeout, remove their co-worker from the situation, bring in other people to deal with the arrestee or the suspect. I'm sorry, Stewartson has not cited to this court any case that holds that on reasonably analogous facts. And so we submit that we are entitled, FIGS is entitled to qualified immunity under the facts of this situation because the law is not clearly established. When you have two separate discreet uses of force like that, again, when you go back to the standard, it says that if the officer had... I'll let you finish this thought, but then we're going to have to, because I want to give you a couple of minutes for rebuttal, but we can't, you know. Yes, thank you. I totally missed the clock. It's okay. It happens. Oh, okay. I didn't know if you had another question for me. I will yield to my opposing counsel. Thank you very much. Hello, Mr. Keller. Hello, how are you? Okay, and you are good, I hope. I'm doing well, thank you. May it please the court. Your Honors, my name is Duran Keller, and I'm here representing the appellee, Blake Stewartson. The district court made a couple of findings. One of them was that this was obvious as a violation, and the other one was that this was a clearly established right. And I want to talk about each of them. So the first one, he said that Deputy Titus, his conduct would have been obvious as a violation to Deputy Biggs by mere observation that the fellow deputy was using excessive force. And for purposes of this appeal, I think we also have a judicial admission. We assume, we know that that first instance of force, the wall slamming, had already taken place. But I think it's also important to note that I agree with opposing counsel that you've taken into consideration the totality of the circumstances. So let's talk about it. This individual, who was arrested for operating while intoxicated, was brought into a cell, handcuffed, handed off to other officers, by a police officer to jail officers, in the most controlled environment that you could possibly think of. Now, my opposing counsel would have you think that this is, we need to consider the rapidly evolving situation that officers have to deal with. We're not dealing with some tiger that's on the loose with a gun. We're dealing with an individual who's presumably inebriated with his hands tied behind his back. These are the circumstances. And even before the first wall slam took place, there was a verbal altercation. After that verbal altercation, Titus decides he's going to slam this individual's face against the wall, which Biggs admitted he watched. That's where we are from the start. So then, after that happens, a full three minutes passes. But let's not ignore what happens during this three minutes as Titus is standing over this detained individual that's standing on the floor. He then continues to antagonize. And there's a complete pattern of antagonism, and he is carrying him, to me it looks like on the video, that he's pushing him forward into the, quote, padded cell that's not so padded. It's hard plastic. And during the time that he is walking him there, he continues this verbal altercation. And Biggs is right there, and Biggs hears this. So Mr. Biggs wants us to believe that the only thing that we should be looking at is the split second that happens from the time they're already in the cell to – from the point that the tripping starts to the point of the fall. That's – I don't think that's a very good argument because it completely ignores the totality of the circumstances that they're telling us we're supposed to take into consideration. And it seems like counsel is waffling a little bit here today about whether excessive force took place. Luckily, we have a video. But also, for purposes of today and for purposes of summary judgment, all reasonable inferences are in Mr. Stewartson's favor, so we can't assume that there was a wall slamming. I want to make sure that that was clear. And if what Mr. Biggs actually did see, what he claims he saw, was not excessive force according to him, then he's plainly incompetent and he's not entitled to qualified immunity in the first place. The next thing the judge said is that this is clearly established. And that came from so many different cases, Your Honor. This law was clearly established as far back as 1994 in the Yang case, which breaks this down pretty completely and says an officer fails to caution predicate-offending officer to stop. That's Yang versus Harden. But that didn't just happen in Yang. That was Lanigan. That was Montano. That was Harper. That was Pitzer. And my opposition today is saying that this wasn't clearly established. And the district court also, while they claim, my opposing counsel claimed that his reasoning was thin, the court's reasoning was thin, I disagree. He said, the court said that Biggs had an opportunity to intervene. He said he was the officer in charge and had the authority to do so, which by the way, he didn't need to be the officer in charge. I believe the Lanigan's case tells us that it could just be a fellow officer, Yang as well. So he said that Biggs could have done lots of different things. He could have dealt with Blake himself or someone else could have dealt with Blake rather than the individual who has already used excessive force and is engaging in this verbal altercation with him. We're here because he did nothing. I think that we'd be in a completely different situation if he had done something. In that three minutes, he could have done so many different things. He could have said, hey, you, stop. That's too far. Don't do it again. Move away. Or he could have made himself a cup of coffee and then come back and done it because he had three minutes to do it, not the split second that Mr. Biggs' counsel was arguing for today. And all he really needed to do was to caution the officer to stop. And he didn't do it. And this was the officer in charge. He clearly, presumptively, would have listened to him, but he did nothing. Now, the argument today, it didn't come up as much on oral argument, but in the briefing was essentially that there's no case that is exactly on point. But that's not the case law. The Ashcroft case, the Al-Kid case from the Supreme Court talk about how we caution against a high level of generality, but it doesn't say we require a high level of specificity. So here, we have like five different cases just out of the Seventh Circuit alone. And even in the district court's original summary judgment ruling, they cited the Harper, which was a 2005 case that had a string citation to gang, and there were a gang of other decisions right before that. So I don't think there's much merit to this argument that it wasn't clear. Then, we didn't hear about this yet today. There's this issue of fact that Mr. Biggs has placed in the briefing, in Mr. Biggs' opening brief, in his statement of the issue. And again, in the summary of argument, he characterized this as that Biggs did not have sufficient time or opportunity to intervene. That's an issue of fact, which would preclude appellate jurisdiction. That's an issue of fact that the trier of fact would have to determine. And Mr. Biggs could have written his statement of fact any way that he wanted. So I want to consider a similar situation. Let's consider a parent who is watching his or her older son beat up the younger son. In that situation, we all expect the parent to do something, at least to say, stop. That's too much. Now, let's consider another situation. Now, what happens if that parent doesn't do anything? That parent goes to prison. We know that. So now, let's consider another situation. We have a criminal that is battering someone. And there's an officer right there. We expect the officer to do something. And presumptively, they would, because they're here to protect and serve. Now, does that change when the criminal happens to be a fellow officer? I submit that the answer to you is no. In fact, now is when the constitutional right comes into play, where the parent situation and the criminal situation doesn't. I do want to point out that the cases that went against, excuse me, the cases that said qualified immunity was proper are different than this one. So the Lamingham case, which is the one that I noted in my notes as the poking case, the Court of Appeals said in that situation there was, they said the poking officer, the officer that was onlooking as to the poking, had no obligation to put himself in between the successive pokings in order to avail himself to qualified immunity. But really what the court ruled on is there's no other excessive force that was alleged there. That was a motion to dismiss case. We have excessive force here on multiple occasions, but certainly the wall slamming. So that's the reason why this case is different than the Lamingham case. And in the Montano case, which is the, there was a police officer that allegedly was choking an individual with his police light, and there were lots of individuals on 4th of July that were there. They said that there was no evidence that the police officer that was being sued for failure to intervene even knew that this was existing, let alone had an opportunity to intervene. Here we have an admission that he saw this from happening. So the question before the court, as my smarter co-counsel writes it is, could Officer Biggs have done anything in the time between watching Titus slamming a handcuffed Blake Stewartson into a wall and Titus tripping a still handcuffed Blake to the floor? If the answer is anything other than that is logically impossible, this requires a trial. The district court didn't do anything wrong with respect to what we're here about today, and we appreciate the district court's sound reasoning. And unless the court has some time for me, or some questions for me, excuse me, I'm such a rookie, I'll yield the rest of my time. Thank you. You're a rookie? You don't sound like a rookie. Oh, well, that's what I want to go for then. I appreciate that. Thank you, Your Honors. Thank you. Okay. Thank you. Let's give Ms. Scheem in her three minutes. Yes, thank you very much. I want to make a couple of observations. Mr. Stewartson, our lawyer, has just argued about the district court's summary judgment ruling entered on March 9. He didn't argue about what the district court ruled on October 14 of 2021 when the court actually took up our motion for qualified immunity. And so they're focusing on a different ruling and trying to conflate the two. When I say the district court's ruling was very thin on the qualified immunity analysis, it's because the district court's ruling did three things. One, it recited the general law on qualified immunity, that if an officer sees force being used and has an opportunity, a realistic opportunity to intervene, he should do so. Two, that Biggs witnessed the alleged wall slamming, and then it just made the conclusion. Counsel, I'm trying to understand what meat is needed when a district court sees there are disputes of fact. At that point, the inquiry ends with qualified immunity, and everybody has to go to trial. Right. So what more is needed? That's the whole thing, Your Honor. There is not one genuine issue of material fact here. The parties don't disagree about what happened. I think the problem here— I think you do disagree. I think you're saying that Biggs had no realistic opportunity to do anything and no obligation, really, and I think that Mr. Stewartson is saying Biggs did have a realistic opportunity and should have done something. Well, I think we are arguing about the law and not about a genuine issue of material fact because the alleged wall slamming incident was completely over and done. This case is not like—or maybe it is like—Lanigan. There was a poking in Lanigan. The poking happened so quickly that there was nothing the Chief could have done. I know you need to say you're arguing about the law to prevail, but you are still talking about facts. I respectfully disagree. At the very least, wouldn't you say it's a mixed question? I would not because there's no fact that the jury has to decide. Qualified immunity is a question of law for the court, and the question here is, did the mere fact of witnessing the wall slamming incident require Biggs to assume, to predict the future, to know that there was going to be a leg sweep in a different part of the jail a few minutes later? And I want to point out that it wasn't three minutes later,  it was just a little over one minute between the wall slamming and the leg sweep. But the point of the matter is that this case shouldn't be different than Lanigan. There was nothing that the Chief could have done to intervene to stop that poke, and cases don't turn on whether a plaintiff is able to plead some future excessive force incident later. Oh, I see that my time is up. May I finish my thought? You may finish your thought, and then that'll be it. Qualified immunity shouldn't turn on whether a plaintiff is able to plead a second incident of excessive force in the future that is separate and discreet from the first. We respectfully ask the Court to overturn the District Court's ruling on the qualified immunity issue. Thank you. Thank you, and we thank all the parties, both parties. The case will be taken under advisement, and this Court will now be in recess until tomorrow morning at 9.30. Take care of yourselves, everyone. Okay, bye.